# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.: 2:12-cr-00449-GMN-GWF |
| Plaintiff, | ) | |
| vs. | ) | **ORDER REGARDING** |
| | ) | **ECF Nos. 18 and 42** |
| PHILLIP GAINES, | ) | |
| Defendant. | ) | |

## I.    BACKGROUND

Before the Court is Defendant's Motion to Suppress Evidence Pursuant to *Franks v. Delaware* (ECF No. 18), the Government's Response (ECF No. 22), the Government's Addendums to Response (ECF Nos. 23, 24, and 25), Defendant's Reply (ECF No. 26), the Magistrate Judge's Findings and Recommendations Re: Motion to Suppress (hereinafter referred to as the "R&R") (ECF No. 42), Defendant's Objection to the R&R (ECF No. 43), the Government's Response (ECF No. 60), and Defendant's Notice Regarding Produced Discovery (ECF No. 85).

Defendant Phillip Gaines is charged in the Superseding Indictment with violations of 18 U.S.C. §§ 922(g)(1) – Felon in Possession of a Firearm (Count One), and 18 U.S.C. § 924(a)(2) – Felon in Possession of Ammunition (Count Two).  (ECF No. 57.)  The Indictment results from the discovery and seizure of two firearms[1] and ammunition[2] in Defendant's residence pursuant to two search warrants issued on February 19 and 20, 2012.  The Defendant contends

---

[1] The firearms seized were a Taurus PT99 9 mm semi-automatic handgun with 5" barrel, serial # T1K05865, and a Colt 1911 A1 .45 caliber semi-automatic handgun with 5" barrel, serial # 1197242.

[2] Rounds of Federal Brand .40 caliber ammunition, rounds of Winchester brand .45 caliber ammunition, rounds of Taurus brand .9 caliber ammunition, a magazine containing fourteen rounds of .40 caliber ammunition, and a Colt .45 caliber magazine containing one round of .45 caliber ammunition.

there were material misrepresentations or omissions in the affidavit in support of the first

search warrant issued on February 19, 2012, and but for those misrepresentations or omissions,

probable cause would not have existed to support the issuance of the search warrants.

On February 19, 2012, the Las Vegas Metropolitan Police Department (hereinafter

referred to as "LVMPD") obtained a telephonic search warrant for the Defendant's residence[3]

in connection with an unrelated attempt murder investigation.  Upon executing the warrant on

the evening of February 19, 2012, the LVMPD found no evidence relating to the alleged

murder; however, they did find two firearms in the attic of the home and ammunition in

Defendant's bedroom.  Due to the Defendant's status as a felon, a second telephonic warrant,

also known as a "piggy-back" warrant, was obtained on February 20, 2012 at 2:42 a.m.  The

Defendant moves to suppress both firearms and the ammunition pursuant to *Franks v*

*Delaware,* arguing the affidavit supporting the warrant contains material omissions and

misrepresentations. 438 U.S. 154 (1978).

## II.   LEGAL STANDARD

### A.   VALIDITY OF THE SEARCH WARRANT

The Fourth Amendment provides that "No warrants shall issue, but upon probable cause,

supported by Oath or affirmation ..." U.S. Const. Amend. IV. The text of the Fourth

Amendment expressly imposes two requirements in regards to searches and seizures.  First, all

searches and seizures must be reasonable.  Second, a warrant may not be issued unless probable

cause is properly established and the scope of the authorized search is set out with particularity.

See *Payton v. New York*, 445 U.S. 573, 584 (1980).

In *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the

Supreme Court held that a defendant may challenge the validity of a search warrant affidavit

under the Fourth Amendment if he or she makes a substantial preliminary showing that (1) the

---

[3] The house belonged to Defendant's parents.

affidavit contains intentionally or recklessly false statements, and (2) the affidavit purged of its falsities would not support a finding of probable cause. See also *United States v. Martinez-Garcia*, 397 F.3d 1205, 1215 (9th Cir. 2005), citing *United States v. Reeves*, 210 F.3d 1041, 1044 (9th Cir. 2000).

### 1. *False Statements - Deliberately or Recklessly Made*

In initially deciding whether a defendant is entitled to an evidentiary hearing, *Franks* states. "[T]here is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. 438 U.S. at 171.  After an evidentiary hearing, the defendant has the burden of proof by a preponderance of the evidence to establish that the false statements were deliberately made or were made with a reckless disregard for the truth. *United States v. DeLeon*, 955 F.2d 1346, 1348 (9th Cir. 1992).

### 2. *Omission of Facts - Deliberately or Recklessly Made*

The omission of relevant facts from the affidavit may also affect a prior finding or probable cause.  In *United States v. Stanert*, the court stated as follows:

> The use of deliberately falsified information is not the only way by which police officers can mislead a magistrate when making a probable cause determination. By reporting less than the total story, an affiant can manipulate the inferences a magistrate will draw. To allow a magistrate to be misled in such a manner could denude the probable cause requirement of all real meaning.

762 F.2d 775, 781 (9th Cir. 1985).  After an evidentiary hearing, the defendant has the burden of proving that the affiant intentionally or recklessly omitted material facts from the affidavit. In the Ninth Circuit,[4] recklessness is established by showing that the affiant had a "high degree of awareness of the probable falsity" of the statements. *United States v. Senchenko*, 133 F.3d

---

[4] Third Circuit has held that omissions are made with reckless disregard for the truth "when an officer recklessly omits facts that any reasonable person would know that a judge would want to know." *Wilson v. Russo*, 212 F.3d 781, 783 (3d Cir. 2000).  The Eleventh Circuit has held that recklessness may be inferred from the omission itself. See *Madiwale v. Savaiko*, 117 F.3d 1321, 1327 (11th Cir. 1994) ("[I]t is possible that when the facts omitted from the affidavit are clearly critical to a finding of probable cause the fact of recklessness may be inferred from proof of the omission itself.")

1153, 1158 (9th Cir. 1998).   An officer acts with at least a reckless disregard for the truth when the affidavit did not report important factual information that was within the officers' knowledge at the time the affidavit was prepared. See *Chism v. Washington State*, 661 F.3d 380, 388 (9th Cir. 2011); cf. *Butler v. Elle*, 281 F.3d 1014, 1025–26 (9th Cir. 2002) (per curiam); *Stanert*, 762 F.2d at 781; see also *Liston v. Cnty. of Riverside*, 120 F.3d 965, 975 (9th Cir. 1997) ("Given the importance of the [omitted information] to the probable cause analysis . . . a jury could reasonably conclude that [the affiant's] failure to mention [that information] in his affidavit amounted to at least reckless disregard for the truth.").

<u>Materiality of Omitted Fact</u>

The movant must show that the omitted information is material. *United States v. Chavez-Miranda*, 306 F.3d 973, 979 (9th Cir. 2002).  In determining whether an omission was material, "the pivotal question is whether an affidavit containing the omitted material would have provided a basis for a finding of probable cause." *Id*. (quoting *United States v. Garcia-Cruz*, 978 F.2d 537, 541 (9th Cir. 1992)).

**B.   RENEWED PROBABLE CAUSE DETERMINATION**

To sustain a *Franks* challenge and suppress the items seized pursuant to the search warrant, the defendant must also show that the affidavit, purged of its falsities or supplemented by the omitted facts, would not be sufficient to support a finding of probable cause. *Stanert*, 762 F.2d at 782, citing *Franks*, 438 U.S. at 171-72, 98 S.Ct. at 2684.  The effect of the misrepresentations and omissions is considered cumulatively. *Id*.  The court must determine "whether the affidavit, once corrected and supplemented, would provide a magistrate with a substantial basis for concluding that probable cause existed." *Id*. See also *United States v. Jawara,* 474 F.3d 565 (9th Cir. 2007).  The relevant facts reviewed during a reassessment of whether probable cause still exists in the corrected affidavit include only those facts contained within the four corners of the warrant and other limited facts relating to omissions and

misrepresentations contained in the warrant. *Ewing v. City of Stockton*, 588 F.3d 1218, 1225 at n.8 (9th Cir. 2009).

Probable cause is determined by the totality of the circumstances. *United States v. Meling*, 47 F.3d 1546, 1554 (9th Cir. 1995); *Stanert*, 762 F.2d at 778.  It is a fluid concept which turns on the assessment of probabilities in particular factual contexts, not readily or even usefully reduced to a neat set of legal rules. *Id*. citing *Illinois v. Gates*, 462 U.S. 213, 231, 103 S.Ct. 2317, 2328–29, 76 L.Ed.2d 527 (1983).  "[P]robable cause means 'fair probability,' not certainty or even a preponderance of the evidence.  In short, a magistrate judge is only required to answer the 'commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place' before issuing a search warrant." *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006).

"Suppression remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth." *United States v. Leon*, 468 U.S. 897, 923 (1984).  Generally, when a court reviews the probable cause determination of a search warrant, great deference should be given to the issuing judge.  The Ninth Circuit, however, has held that a "limited exception to the 'great deference' rule makes sense [when] the magistrate's judgment would have been based on facts that are no longer on the table." *United States v. Kelley*, 482 F.3d 1047, 1051 (9th Cir. 2007).  Other circuits likewise have decided that review of the sufficiency of an excised affidavit cannot be deferential. See, e.g., *United States v. Elkins*, 300 F.3d 638, 651 (6th Cir. 2002); *United States v. Kolodziej*, 712 F.2d 975, 977 (5th Cir. 1983).

### <u>*Leon* Good Faith Exception</u>

The good faith exception articulated by the Supreme Court in *United States v. Leon*, applies if the officer's reliance was on a judge's determination of probable cause and the

technical sufficiency of the warrant that was issued is objectively reasonable. 468 U.S. 897, 921-922 (1984); cf. *Harlow v. Fitzgerald*, 457 U.S. 800, 815–819 (1982).  "There is no 'good faith' exception to the *Franks* doctrine: a warrant based upon knowing or recklessly made falsehoods in the affidavit will be invalid." *Mills v. Graves*, 930 F.2d 729, 733 (9th Cir. 1991)(citing *Leon*, 468 U.S. at 914.).  If it is clear that an officer has no reasonable grounds for believing that the warrant was properly issued, then the good faith exception is inapplicable.

## C.   REPORT AND RECOMMENDATION – by Magistrate Judge

In this case, the Magistrate Judge found an evidentiary hearing was warranted[5] and subsequently determined that the LVMPD affidavit contained "misleading" information but also "omitted" inculpatory information. (ECF No. 42, R&R at 14, ll. 10-12 and at 15, ll. 14-15.) Specifically, the Magistrate Judge stated that one of the victims, Kevin McDermott, identified Defendant Gaines as the shooter; this was a misleading statement because, without more, it incorrectly suggested that Mr. McDermott's identification of Mr. Gaines was reliable. (ECF No. 42, R&R at 14, ll. 10-12.)  Information casting doubt "on the reliability of Mr. McDermott's photo lineup identification of Defendant Gaines, should have been included in the affidavit." (ECF No. 42, R&R at 14, ll. 25-26.)  The Magistrate Judge also determined that the LVMPD affidavit omitted inculpatory information "that supported an inference that Phillip Gaines was the shooter." (R&R at 15, ll. 14-15.)

The Magistrate Judge then considered what "a correctly drafted affidavit would have stated" by inserting the information casting doubt on the reliability of the statement claiming

---

[5] A defendant must satisfy the following five factors in order to make a "substantial preliminary showing" entitling him to a *Franks* hearing:

> (1)  alleging with specificity the portions of the warrant affidavit are claimed to be false; (2) contending that the false statements or omissions were deliberately or recklessly made; (3) accompanying the allegations with a detailed offer of proof, including affidavits; (4) a challenge to the veracity of affiant; and (5) the establishing that the challenged statements are necessary to a finding of probable cause.

*United States v. Perdomo*, 800 F.2d 916, 920 (9th Cir. 1986) (citing *United States v. DiCesare*, 765 F.2d 890, 895 (9th Cir. 1985)).

the victim identified the Defendant but also inserted additional inculpatory information which was previously omitted from the affidavit. (R&R at 15, l. 21).  For example, the court concluded that the opinion of Detective Edge (nee Miles) that the victim was merely equivocating about his ability to identify the defendant as the shooter because the victim desired to deal with the defendant himself, apart from and independent of the judicial system "could have been included in the affidavit…" (R&R p. 15, n.5).  Various other additional inculpatory facts[6] were added by the magistrate judge to the affidavit and the court determined that "although the corrected affidavit would have made clear that Mr. McDermott's identification of Defendant Gaines as the shooter was subject to significant doubt, it would also have contained other information, omitted from the original affidavit, that supported the inference that Defendant Gaines was the shooter." (R&R at 16, ll. 19-22).  Ultimately, the court determined that the "affidavit, as corrected to include all relevant and material information known to the police, however, would still have provided probable cause." (R&R at 16, ll. 26-27).

### D.   ISSUES PRESENTED

The Defendant timely objected to the Findings and Recommendations arguing that the magistrate judge incorrectly applied the *Franks* analysis by improperly supplementing the affidavit. (ECF No. 43 at 2, l. 3.)  The Government concurs with the R&R's denial of the Defendant's motion to suppress, but maintains that any omissions or misrepresentations were not made intentionally or recklessly, and therefore the affidavit should stand and Defendant's motion be denied. (ECF No. 60 at 1, ll. 20-21 and at 2, ll. 7-8.)  The Government contends that the magistrate judge determined the affidavit contained an "omission", not a false statement or misrepresentation, and respectfully disagrees with that determination. (ECF No. 60 at 2, ll. 9-10.)  The Government also notes that the magistrate judge failed to "make a finding that any

---

[6] The Defendant argues these facts were derived from police reports and voluntary statements but not elicited at the evidentiary hearing. (ECF No. 43, p 2, ll. 24-25.)

1 statements or omissions in the search warrant affidavit were made recklessly or intentionally."

2 (ECF No. 60 at 2, ll. 21-22.)  Finally, the Government argues that since the magistrate judge

3 found that the detective made an omission, the supplemental information added to the corrected

4 affidavit was proper. (ECF No. 60 at 5, ll. 8-16.)

5        Shortly thereafter, additional information was disclosed by the Government requiring a

6 new evidentiary hearing.  The Defendant's Motion to Reopen Evidentiary Hearing and Set this

7 for a *De Novo* Evidentiary Hearing Before the District Judge, (ECF No. 71), was granted and

8 the transcript of the prior evidentiary hearing before the magistrate judge was stricken. (ECF

9 No. 74.)

10     **E.   LEGAL ANALYSIS**

11        Pursuant to *Franks*, "when an intentional or reckless misrepresentation in an affidavit is

12 necessary to a magistrate's finding that that affidavit supports probable cause, the warrant must

13 be invalidated.  'The fact that probable cause did exist and could have been established by a

14 truthful affidavit does not cure the error.'" *United States v. McCain*, 271 F.Supp.2d 1187, 1192

15 (N.D.Cal.,2003) (quoting *United States v. Davis*, 714 F.2d 896, 899 (9th Cir. 1983) ("[t]he fact

16 that probable cause did exist and could have been established by a truthful affidavit does not

17 cure the error."); *United States v. Nelson*, 2010 WL 2746400 (D.S.D., 2010); *United States v.*

18 *Reinholz*, 245 F.3d 765, 775 (8th Cir. 2001) ("retroactively supplementing the affidavit with

19 material omissions bolstering probable cause would undermine the deterrent purpose of the

20 exclusionary rule.")  Adding information to the original affidavit is appropriate only as to omit

21 information tending to cast some doubt on probable cause otherwise shown. 2 Wayne R.

22 LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 4.4 (4th ed.) (citing *United*

23 *State v. Nielsen*, 727 P.2d 188 (Utah 1986)).

24       *1.   Warrant Affidavit*

25 The original affidavit recited the following facts to demonstrate probable cause

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

supporting the issuance of the search warrant:

> On February 6th, 2012 at about 1819 hours, Kevin McDermott, ... Victor Nagera, ... and Abraham (sic)[7] Corrales, ... arrived in the area of Shawnee Avenue and Hussey Drive in McDermott's pickup truck.  They had an on-going dispute with a Hispanic male subject, Fabian Lazaro, ... and were on the way to meet him for a fight when they noticed a possible silver Chevrolet Malibu or Impala, unknown license plate, occupied by multiple subjects. McDermott stopped his vehicle at the intersection as did the silver car. All occupants exited both vehicles to include Fabian Lazaro, his brother Jose Lazaro, ... and Merly Lazaro, ..., and an unknown Black male from the silver vehicle. When the black male exited the silver car, he produced a handgun and shot both Nagera and McDermott. He also shot twice at Corrales as Corrales attempted to flee on foot but did not strike him. All subjects in the silver car fled the scene and were not located at the time of the incident. Nagera and McDermott were transported to University Medical Center Trauma for treatment regarding life-threatening injuries sustained during the incident, where Nagera subsequently underwent emergency surgery. Multiple .22 caliber cartridge cases were located at the scene as was a brick with bloody fingerprints. During the course of the investigation, two contacts with knowledge about the incident, Shawna Truman and Channa Truman, who are twin sisters, ... advised they were aware of a Black male subject who is an immediate neighbor, as well as a friend of the Lazaros on Mountain View Drive in Las Vegas. His name is Phillip. Channa advised she lives on Mountain View Drive as well and has known all of the subjects for a long period of time. On the night of the alleged incident prior to the shooting, she observed the Lazaro brothers and Gaines all standing, I'm sorry, and Phillip, all standing outside of the Lazaro residence, 5124 Mountain View Drive, in a huddle. When she became [sic] shooting incident and that a Black male was involved, she believed the Black male was Phillip, later determined to be Phillip Gaines, ... who is the Lazaros neighbor at 5120 Mountain View Drive. **A photo lineup was conducted with victim McDermott during which he identified Gaines as the shooter during the aforementioned incident.** In the investigating Detective's opinion, McDermott was determined to be the best witness. Neither Nagera nor Corrales could identify anyone from the lineups. Patrol located and arrested Gaines on February 18th, 2012 in regard to an unrelated Warrant and contacted Detectives regarding his custody status.

Affidavit, pgs. 3-4.2

---

[7] Ibrahim

2.    *Identification by Victim McDermott*

On February 6, 2012, two of the three victims were shot and transported to the hospital. Detective Farrah Edge (nee Miles) testified on September 4, 2013, during the second evidentiary hearing, that she was the Lead Detective in an attempt murder investigation.[8]  Two days after the shooting, on February 8, 2012, Detective Edge interviewed one of the victims shot in the back of the head as well as in the back, Kevin McDermott.  McDermott explained that prior to the shooting, he had agreed to meet and fight Fabian Lazaro, the father of his girlfriend Shawna's child.  While McDermott and his associates were driving, another vehicle approached and a black male exited and shot him and his associate, Victor Nagera.  Another of his associates, Ibrahim Corrales, exited McDermott's car and despite shots being fired, he was not struck.  During this interview, McDermott said he was not sure if he had previously picked the correct person from the photo lineup.  Det. Edge testified she failed to include this information in her affidavit because she believed McDermott was just backpedaling and wanted to take care of the Defendant himself.  However, she admitted that McDermott never recanted his identification of the other suspects, Jose and Robert.  Det. Edge also admitted that McDermott stated later in a later interview taken February 8, 2012, one week before she drafted her affidavit, that he would not be able to recognize the shooter.  Det. Edge could not explain why she made these three omissions.

Despite the fact that she was the Lead Detective of this investigation, Det. Edge testified that when she drafted the search warrant affidavit on February 19, 2012, she was not aware that McDermott had been previously interviewed in the hospital on February 6, 2012, the date of the shooting, by Det. Craig two days prior to her own interview.  Det. Edge recalled that on the date of the shooting, February 6, 2012, she was present with Det. Craig in McDermott's hospital room, when he was shown a six-pack photo lineup and circled the photo of the

---

[8] The parties have elected not to order a copy of the transcripts nor provide supplemental briefing.

Defendant and he wrote 60% next to the photo.  However, she stated that she was not aware an interview had also taken place which was recorded and that a transcript of the recorded interview had been completed prior to the date she drafted the search warrant affidavit at issue in this case.

During that initial interview, on February 6, 2012, the date of the shooting, McDermott recanted his prior 60% identification and stated that he could not identify the shooter even if he saw him again.  He explained that he was 7-8 feet away when he was shot in the back of his head and back by the shooter who was at the rear of his vehicle.  Det. Edge maintained that she did not recall having reviewed the transcript of Det. Craig's interview with McDermott on the night of the shooting.  However, on cross examination, after her recollection was refreshed by the previously stricken transcript of her testimony at the earlier May 14, 2013 evidentiary hearing, she admitted that she had in fact reviewed the transcript of the interview with McDermott's recorded recantation made on the night of the shooting. (ECF No. 47 at 28, ll. 1-9.)  This interview was recorded by Det. Craig and Det. Edge admitted she reviewed the transcript prior to drafting her February 19, 2012 affidavit.

Det. Edge also admitted that she testified at the October 30th state court trial that the reason she returned to interview McDermott a second time on February 8th was because he was a lot more coherent than he had been on the night he was shot in the head and back on February 6th.  Det. Edge explained that she was aware McDermott had been shot in the head and that she thought he was going to die.  Accordingly, she admitted that she failed to include in her search warrant affidavit any information to convey to the magistrate that McDermott was not very coherent when he identified the Defendant.

The Defendant was arrested on February 18, 2012 on an unrelated warrant and Det. Edge interviewed him in custody, yet she failed to mention anything about this at all in her

/ / /

affidavit she drafted the very next day.[9]  She also did not include information regarding a black

male juvenile seen jogging in the area because she did not consider him a suspect.

### 3.   *Identification by Victim Victor Nagera and Ibrahim Corrales*

Det. Edge did not include information about the other six pack photo lineups shown to

other witnesses.  For example, Det. Edge admitted that she failed to include in her affidavit that

victim Ibrahim Corrales had described the shooter as having hair sticking out of a cap while the

Defendant had always sported a bald head.  Similarly, she failed to inform the magistrate that

the Defendant did not match the description given by another victim, Victor Nagera, who

described the shooter as 5'10", 150 lbs.  Rather, Det. Edge referenced these exculpatory facts

by summarily stating that the other victims failed to identify the Defendant.  She did not inform

the magistrate that when Ibrahim Corrales was shown the photo of the Defendant, he stated the

shooter was not in the photo lineup.

On February 20, 2012, the very next day after she drafted the affidavit at issue in this

case, Det. Edge drafted another affidavit requesting a warrant to search the Lazaro brothers'

vehicle which was suspected to have been driven by the shooters.  In that affidavit, however,

Det. Edge did include the fact that McDermott had made two bad identifications of the

Defendant.

### 4.   *Statements Provided By Twin Witnesses*

McDermott's girlfriend, Shawna Truman, was not present at the shooting; however, she

shared with her twin sister, Channa Truman, that McDermott had told her he recognized the

shooter as an associate of the Lazaro brothers.  One of the brothers, Fabian Lazaro, was the

---

[9] Det. Edge also admitted that she sought an emergency telephonic search warrant with permission for a nighttime execution but did not advise the magistrate that the defendant was already in custody, his telephone calls were being recorded and there was no indication that his parents were going to discard any items from their home.  In fact, Det. Edge testified the defendant's parents were hoarders.

father of Shawna's child so she was familiar with individuals who associated with them and surmised the shooter was "Phillip."

Det. Farrah Edge (nee Miles) testified that both Shawna and Channa Truman, were interviewed by Det. Mendoza, provided the Defendant's first name to the detective and stated that the Lazaro brothers had no other African-American associates. They were not eye witnesses to the incident. Yet, Det. Edge stated in her affidavit that the twins "had knowledge about the incident" about Channa, she specifically stated that "[o]n the night of the incident prior to the shooting, she observed the Lazaro brothers and Gaines all standing, I'm sorry, and Phillip, all standing outside of the Lazaro residence, 5124 Mountain View Drive, in an huddle." However, Channa's recorded statement reveals while she had seen the Defendant together with his neighbors, the Lazaro brothers, in the past, she "didn't see him over there in the group at the time… seen him when I – when I came back home from the Boys and Girls Club." Likewise, the actual statement provided by Shawna to Det. Mendoza was that she did not see the Defendant with the brothers but it was dark outside so he might have been standing behind the brothers. Det. Edge testified that she knew both Shawna and Channa were speculating and admitted she did fail to supply this information in her affidavit. This would appear to be a false statement; however, the Defendant is not challenging this statement as false, but rather as merely a misrepresentation of the inconsistent statements provided by Channa Truman about her observations. (ECF No. 43 at 12, ll. 5-7.)

### 5. *Materiality and Det. Edge's Intent*

The magistrate judge properly found that the representation by Detective Miles (nee Edge) in the affidavit regarding the victim McDermott's identification was a material misrepresentation and misleading. This Court agrees with the findings in the report and recommendation that Detective Miles (nee Edge) included a material misrepresentation in the affidavit and that her conduct was deliberate and reckless, not an innocent byproduct of an

exigent circumstance.  While the detective may have been rushing to execute the search warrant before the Defendant was released from custody, she had eleven days from when the victim was interviewed to prepare the affidavit for the search warrant.  It is not reasonable to believe that the lead detective in an attempt murder investigation resulting with multiple hospitalized shooting victims did not have the relevant information to properly describe the circumstances pertaining to the reliability of the victim's identification.

In sum, the Defendant has met his burden to establish by a preponderance of the evidence that Det. Edge admitted at the September 4, 2013 hearing that she did not include in her search warrant affidavit information that was known to her – 1) McDermott's handwritten notation of 60% on the Defendant's photo during his review of the six-pack photo lineup; 2) his location 7-8 feet away when he was shot in the back of his head and back by the shooter who was at the rear of his vehicle, 3) his lack of lucidity (was not very coherent) when he identified the Defendant, and 4) McDermott's recorded recantation that same evening stating he was not sure if he had picked the right person.  These four omissions were material because she specifically stated in her affidavit that, "[A] photo lineup was conducted with victim McDermott during which he identified Gaines as the shooter during the aforementioned incident."  Det. Edge testified that McDermott's handwritten note indicating only 60% certainty was a significant fact that should have been provided but that she just forgot.  However, inclusion of these four omissions directly affects the reliability of the stated identification.

Furthermore, the recanted identification was a material fact and could not have been an innocent mistake or negligence in light of McDermott's failure to recant his identification of the other suspects, Jose and Robert.  The omitted information belies the explanation provided by Det. Edge that she believed McDermott was just backpedaling and wanted to take care of the Defendant himself.  She additionally omitted the existence of another suspect, the black juvenile jogger.  Det. Edge misrepresented the statements made by the twins, Channa and

Shawna.  Det. Edge mischaracterized their assumption that the Defendant was the shooter and portrayed it as actual knowledge.  She represented in her affidavit that Channa had unequivocally stated she had observed the Defendant standing with the Lazaro brothers just before the incident when they were clearly just conjecturing about whether the Defendant was present at all.

Additionally, Det. Edge initiated an emergency telephonic warrant requesting approval for a nighttime execution, but failed to advise the magistrate that the Defendant was in custody the previous day.  This conduct further substantiates the finding that Det. Edge was omitting material information in an effort to misrepresent the facts to obtain the search warrant.

Finally, at the September 2013 hearing Det. Edge maintained that she did not know about McDermott's recantation when she provided information to the magistrate affirming that he had identified the Defendant.  She claimed she did not recall having reviewed the transcript of Det. Craig's interview with McDermott taken the night of the shooting.  However, on cross-examination, she admitted that she had in fact actually reviewed the transcript prior to drafting the affidavit and had even previously testified as to this fact.

In sum, Det. Edge made several omissions, misrepresentations and provided a potentially false statement in her affidavit.  Her conduct was deliberate or reckless, at best.  Accordingly, the affidavit must be corrected and the information reassessed to determine if a reasonable judge would still have found probable cause existed to authorize the search of the Defendant's residence.

6.   *Corrected Affidavit*

Based on that finding, that misleading and false statement must be excised from the warrant and the omissions inserted.  This court finds the resulting affidavit would more

/ / /

/ / /

accurately read something like this[10],

> During the course of the investigation, ~~two contacts with knowledge about the incident,~~ Shawna Truman and Channa Truman, who are twin sisters, date of birth 08/21/84, advised that they were aware of a black male subject who is an immediate neighbor, as well as a friend of Lazaros on Mountain View Drive in Las Vegas. His name is Phillip. Channa advised she lives on Mountain View Drive as well and has known all the subjects for a long period of time. On the night of the incident prior to the shooting, she observed the Lazaro brothers and ~~Gaines~~ *a black male* all standing, I'm sorry, ~~and Phillip,~~ all standing outside of the Lazaro residence, 5124 Mountain View Drive, in a huddle *which she speculated could have been Phillip*. ~~When she became shooting [sic] incident and that a Black male was involved, she believed the Black male was Phillip, later determined to be~~ Phillip Gaines, date of birth 07/29/87, who is the Lazaros neighbor at 5120 Mountain View Drive.  A photo lineup was conducted with victim McDermott during which he ~~identified Gaines as the shooter during the aforementioned incident.~~ *stated that he was 60% sure that Gaines was involved.  However, prior to the photo identification, McDermott told officers that he would not be able to recognize the black male if he saw him because the shooter was 7-8 feet away from him, positioned at the rear of the vehicle and he was shot in the back of the head and back.  Further, two days after the photo lineup was shown to McDermott, he was more coherent and indicated to this affiant that he was unsure whether he picked the right individual out of the photo lineup.*  In the investigating Detective's opinion, McDermott was determined to be the best witness. Neither Nagera [sic] nor Corrales could identify anyone from the lineups.

## III.   **CONCLUSION**

This Court does not accept the Findings and Recommendation, in part, because additional inculpatory facts were inserted into the affidavit which had not been contained in the original affidavit.  While the Court agrees that there certainly existed sufficient probable cause had Det. Edge provided the magistrate with no misleading information and only the accurate information; unfortunately, the existence of such information cannot save an affidavit that violates *Franks*.  The inquiry for *Franks* purposes is not one about how the affidavit can be perfected.  An affidavit with knowing falsehoods in it should not be open to rehabilitation.  To hold otherwise would encourage rather than discourage law enforcement to provide magistrates

---

[10] The Court is mindful that a number of different combinations of words and phrases exist which could be equally appropriate.

with misrepresentations thereby usurping the "function of the issuing magistrate to determine the reliability of information and credibility of affiants in deciding whether the requirement of probable cause has been met." 438 U.S. 160.  Det. Edge's conduct prevented the magistrate from exercising its important role as an independent authority.  Her interference with the Court's responsibility to ensure that a person's constitutional right to be free of all searches and seizures, except those authorized by a warrant based upon probable cause, undermined the integrity of the judicial system requiring the remedy provided in *Franks.*

This Court finds that upon reassessment of the correctly modified affidavit above, a reasonable magistrate would not have been provided with a substantial basis for concluding that probable cause existed to issue the search warrant which led to the discovery and seizure of the firearms and the ammunition.

Accordingly, the Findings and Recommendations (ECF No. 42) are **REJECTED, in part**, and the Defendant's Motion to Suppress (ECF No. 18) is **GRANTED**.

**DATED** this 4th day of October, 2013.

_____
Gloria M. Navarro
United States District Judge